UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRANDON POPE,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>OFFICE OF CONGRESSMAN DOUG LAMBORN,<br><br>　　　　Defendant. | Civil Action No. 21-1321 (JEB) |

MEMORANDUM OPINION

　　Plaintiff Brandon Pope worked for Defendant Office of Congressman Doug Lamborn from 2019 until late 2020, when he was terminated. Lamborn, who represents Colorado's Fifth Congressional District, has two offices: a District Office in Colorado Springs where Plaintiff worked and his office in Washington. As the COVID-19 pandemic emerged in March 2020, Pope alleges that he repeatedly raised concerns to his superiors about safety protocols in the District Office. In response, he asserts in this lawsuit, the Office terminated him, in violation of the Congressional Accountability Act. Defendant, for its part, contends that it fired Pope because he lacked professionalism and was abrasive toward colleagues.

　　The Office now moves to transfer the case to the District of Colorado. Because the relevant factors favor transfer, the Court will grant the Motion.

**I.　Background**

　　According to the Complaint and "undisputed facts outside the pleadings," which "may [be] consider[ed] . . . when deciding a motion to transfer," Sheffer v. Novartis Pharms. Corp., 873 F. Supp. 2d 371, 380 (D.D.C. 2012), Pope worked for Congressman Lamborn from August

1

2019 until December 2020.  See ECF No. 1 (Compl.), ¶¶ 5, 25, 61.  Lamborn's Fifth District encompasses Colorado Springs, where Plaintiff lives.  Id. at 1, ¶¶ 5.  Pope's supervisors included a District Director who worked in the District Office with him, as well as Lamborn himself and his Chief of Staff, Dale Anderson, who split their time between that office and the one in Washington.  Id. at 1–2; see ECF No. 8 (Pl. Opp.) at 8.

Pope alleges that, starting in March 2020 and continuing until his termination nine months later, he voiced concerns and suggestions about COVID-19 safety protocols for District Office employees.  See Compl., ¶¶ 26–59.  He further alleges that those concerns were ignored or rebuffed.  Id.  Pope asserts, among other things, that employees in the District Office were generally not permitted to telework, were not required to wear masks in the office, and that no efforts were taken to socially distance employees.  Id., ¶¶ 26–27.

On December 7, 2020, Chief of Staff Anderson called Plaintiff from Washington to terminate him.  Id., ¶ 59.  Pope was in Colorado when he received the call.  Id.  Anderson told Pope that he and Lamborn had made the decision because of Pope's "lack of professionalism and abrasiveness toward his colleagues and supervisors."  Id.  Plaintiff alleges that the "true reason that Chief of Staff Anderson and Representative Lamborn terminated Mr. Pope was that Mr. Pope had vocally opposed Lamborn's reckless refusal to adopt any reasonable safety protocols in the District Office."  Id., ¶ 62.

Pope brought this suit in May 2021, contending that his termination violated the Congressional Accountability Act, 2 U.S.C. § 1341.  Id., ¶ 64.  The CAA mandates that "[e]ach employing office and each covered employee shall comply with the provisions of section 5 of the Occupational Safety and Health Act of 1970 (29 U.S.C. § 654)."  2 U.S.C. § 1341(a)(1).  The CAA also makes it "unlawful for an employing office to intimidate, take reprisal against, or

otherwise discriminate against, any covered employee because the covered employee has opposed any practice made unlawful by th[e Act]." 2 U.S.C. § 1317.  Defendant now moves to transfer the case to the District of Colorado.  See ECF No. 7-1 (Def. Motion to Transfer).

## II.     Legal Standard

Even if a plaintiff has brought his case in a proper venue, a district court may, "[f]or the convenience of parties and witnesses, in the interest of justice . . . transfer [the case] . . . to any other district . . . where [the case] might have been brought." 28 U.S.C. § 1404(a).  District courts have "discretion . . . to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

"To warrant transfer under § 1404(a), the movant must first show that the plaintiff could originally have brought the case in the transferee district."  Ngonga v. Sessions, 318 F. Supp. 3d 270, 274 (D.D.C. 2018) (quoting Douglas v. Chariots for Hire, 918 F. Supp. 2d 24, 31 (D.D.C. 2013)).  "The movant must also show that considerations of convenience and the interest of justice weigh in favor of transfer."  Id.  This second inquiry "calls on the district court to weigh in the balance a number of case-specific factors," related to both the public and private interests at stake.  Stewart Org., 487 U.S. at 29.  The burden is on the moving party to establish that transfer is proper.  Ngonga, 318 F. Supp. 3d at 274.

## III.    Analysis

The first part of the § 1404(a) test is undisputed in this case: "[B]oth parties agree that this case could have been brought in either Washington, D.C. or Colorado."  Pl. Opp. at 3.  That is because this suit is against a federal governmental entity, which triggers the venue requirements of 28 U.S.C. § 1391(e).  See Ngonga, 318 F. Supp. 3d at 274.  Under that section,

venue is proper in any district in which "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred . . .[,] or (C) the plaintiff resides if no real property is involved in the action." As Pope resides in Colorado and no real property is involved, venue is proper in the District of Colorado under at least one test. See Compl. at 1.

The Court will therefore devote its analysis to the second part of the § 1404(a) inquiry. It will first examine the private-interest factors before turning to the public-interest factors, both of which favor transfer here.

    A. Private-Interest Factors

The "private-interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof." Ngonga, 318 F. Supp. 3d at 274 (internal quotation marks and citation omitted). To streamline its analysis, the Court combines those factors into four considerations.

    1. *Plaintiff's Choice of Forum*

"While a plaintiff's choice of forum is usually given deference, this deference is 'not always warranted where the plaintiff's choice of forum has no meaningful ties to the controversy, and where transfer is sought to a forum with which plaintiff[] ha[s] substantial ties and where the subject matter of the lawsuit is connected.'" Id. at 275 (quoting Jimenez v. R&D Masonry, Inc., No. 15-1255, 2015 WL 7428533, at *3 (D.D.C. Nov. 20, 2015)). "Indeed, when the forum preferred by the plaintiff is not his home forum, and the defendant prefers the plaintiff's home forum, there is little reason to defer to the plaintiff's preference." Id. (internal quotation marks and citation omitted).

That is the case here, as the Office prefers Pope's home forum. Plaintiff counters that, because the decision to terminate him and the subsequent call so informing him were made from Washington, his preferred forum has meaningful ties to the controversy. See Pl. Opp. at 4–5. As explained in more detail below, however, while Plaintiff may be correct that our city has some weak ties to the controversy, they are far outweighed by Colorado's robust connections to this dispute. In short, this case is about a Colorado resident's employment dispute with his Colorado-based employer, who is also a Representative of the people of Colorado. "As the subject matter of this suit is thus connected to the [] District of [Colorado], which is also Plaintiff['s] home forum, Plaintiff['s] choice of forum receives no deference." Ngonga, 318 F. Supp. 3d at 275.

2. *Defendant's Choice of Forum*

Although a defendant's choice of forum is relevant to deciding a § 1404(a) motion, "it is not ordinarily entitled to deference." Tower Labs, Ltd. v. Lush Cosmetics Ltd., 285 F. Supp. 3d 321, 326 (D.D.C. 2018). Because the Office is moving to transfer, it "must establish that the added convenience and justice of litigating in [its] chosen forum overcomes" any deference owed to Plaintiff's choice of venue. Id. As just discussed, Pope's choice of forum receives no deference here. On the other hand, as the Court will explain in more detail below, Defendant has established that litigating this case in Colorado would be the most convenient for the parties and witnesses. The initial factors concerning the parties' choice of forum thus favor transfer to some degree, though they do not tip heavily that way.

3. *Whether Claims Arose Elsewhere*

An important question here is where Pope's claim arose. "When the material events that form the factual predicate of a plaintiff's claim did not occur in his chosen forum, transfer is favored." Id. at 326. "[C]ourts in this district have held that claims 'arise' . . . in the location

5

where the corporate decisions underlying those claims were made . . . or where most of the significant events giving rise to the claim occurred." Jimenez, 2015 WL 7428533, at *3 (quoting Treppel v. Reason, 793 F. Supp. 2d 429, 436–37 (D.D.C. 2011)).

As most of the significant events giving rise to Pope's claim occurred in Colorado, this factor favors transfer. At its core, this case is about Plaintiff's employment in Colorado: he worked in an office in Colorado Springs, where he lives, see Compl., ¶ 5; his employer was not only based in Colorado, but also represents the people of Colorado; and the events leading to his termination and this lawsuit were his raising safety concerns about the workplace environment of his office in Colorado. Id., ¶¶ 26–58. Indeed, the stated reason for Pope's firing was a "lack of professionalism and abrasiveness toward his colleagues and supervisors" located in Colorado. Id., ¶ 59. Even under Plaintiff's theory of the case, the "true reason" was retaliation for complaining about the physical working conditions of his office in Colorado. Id., ¶ 62.

To be fair to Pope, the Complaint alleges that, "[o]n December 7, 2020, Chief of Staff Anderson called Mr. Pope from Washington, D.C., and told Mr. Pope that the decision had been made with Representative Lamborn's approval to terminate him." Id., ¶ 59 (emphasis added). In that sense, Plaintiff is correct that the ultimate decision at issue in this case was executed in Washington. See Pl. Opp. at 8. But under the circumstances here — in which the relevant decisionmakers work and live in both Colorado and Washington and merely happened to be in the latter city when they called Pope — the fact that nearly all of the significant events giving rise to Plaintiff's claim occurred in Colorado plainly outweighs the decisionmakers' location when they called him. This factor thus strongly supports transfer.

6

4. *Convenience of Parties and Witnesses, and Ease of Access to Sources of Proof*

The final three private-interest factors all relate to convenience, and they too line up for Defendant. Pope resides in Colorado, and he thus "cannot reasonably claim to be inconvenienced by litigating in [his] home forum." Aishat v. U.S. Dep't of Homeland Sec., 288 F. Supp. 3d 261, 270 (D.D.C. 2018) (quoting Tower Labs., Ltd., 285 F. Supp. 3d at 326). And, as courts in this district have recognized, "the location of counsel is not a consideration." Wolfram Alpha LLC v. Cuccinelli, 490 F. Supp. 3d 324, 333 (D.D.C. 2020) (citing cases). Defendant is also at home in Colorado, and the District of Colorado is thus a convenient forum for the parties.

The convenience to witnesses is similar. Likely witnesses include Pope, Lamborn, Anderson, then-District Office Director Joshua Hosler, various current and former District Office employees, as well as Pope's healthcare providers and other employers. See Def. Motion to Transfer at 11. Each of these possible witnesses resides in Colorado, even if Lamborn and Anderson split their time between there and D.C. It is thus difficult to see how Colorado is not the more convenient forum for each of the essential witnesses.

The private-interest factors collectively weigh in favor of transfer.

B. Public-Interest Factors

The Court next turns to the public-interest factors, which "include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in having local controversies decided at home." Ngonga, 318 F. Supp. 3d at 274 (internal quotation marks and citation omitted). These factors, taken together, yield the same outcome.

7

1. *Transferee Court's Familiarity with Governing Laws*

The legal issues in this case involve only federal statutes — namely, the Congressional Accountability Act and the Occupational Safety and Health Act, see Compl., ¶¶ 64–69 — and all federal courts are presumed "competent to decide federal issues correctly." Nat'l Wildlife Fed'n v. Harvey, 437 F. Supp. 2d 42, 49 (D.D.C. 2006) (quoting In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1175 (D.C. Cir. 1987)).  "Thus, both courts are competent to interpret the federal statutes involved in this case, and there is no reason to transfer or not transfer based on this factor." Id.

2. *Relative Congestion of the Courts*

As the parties agree, the relative congestion of the courts "does not strongly favor either side." Pl. Opp. at 15; see Def. Motion to Transfer at 11 ("[T]he congestion factor does not tilt either way.").  The relevant data about caseloads in each court are mixed: while the average filing-to-disposition time is slightly shorter in this district than in the District of Colorado, the average filing-to-trial time is slightly longer here.  See Def. Motion to Transfer at 12 (collecting data).  Those statistics, moreover, "do not, for example, reflect the differences in the caseloads carried by different individual judges in each district." U.S. v. H & R Block, Inc., 789 F. Supp. 2d 74, 84 (D.D.C. 2011).  In short, "neither party has made a showing that the current caseloads of either District would have a bearing on the disposition of this action, [and] the Court finds this factor neutral as well." Ngonga, 318 F. Supp. 3d at 276.

3. *Local Interest in Controversies*

The final public-interest consideration is more telling here: the local interest in deciding controversies at home.  The gravamen of this case — the employment practices of a Colorado politician who employs Colorado residents in his office in Colorado — paradigmatically

implicates local interests.  For instance, "[w]hen a defendant has substantial business engagements in a particular district, that district has a strong local interest in resolving that controversy."  Jimenez, 2015 WL 7428533, at *4 (citing Chariots for Hire, 918 F. Supp. 2d at 34).  While the Office is, among other things, a local employer that does business and hires employees in Colorado, it is hardly a run-of-the-mill local employer.  Indeed, it is the office of a well-known Colorado politician representing Colorado constituents.  Those constituents have a strong local interest in how their Congressman operates his District Office and handles disputes with his Colorado-based employees.

On the other hand, Washington has little local interest in having this controversy decided here.  Although Lamborn spends time at the Capitol and may employ some D.C. residents, the facts at issue in this case do not revolve around his office's employment practices here.  Nor does he represent the people of Washington.  At the end of the day, this factor lands decisively in the transfer column.

### IV.     Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order granting the Motion and transferring the case to the District of Colorado.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  September 15, 2021